Graham Engineering v. United States 2007-11-67 This case stems from the refusal of the U.S. Customs and Border Protection to pay a claim for drawback on the exportation of a molding machine which was exported in unused condition from the port of Houston, Texas. Customs ostensibly denied the drawback because the drawback claimant Graham failed to file a prior notice of intent to export which would have provided Customs with an opportunity to, at their discretion, examine the merchandise and supervise the exportation of the merchandise. It is Graham's position that that requirement, which is found in Customs regulations but not found in the statute, expands the statute far beyond what Congress intended the statute to cover. By requiring a notice requirement, it leads then to an examination and exportation under Customs supervision. The statute itself is clear and unambiguous. The statute deals with exportation and, separately, destruction under Customs supervision. And yet Customs has, through the promulgation of the regulation, made a determination that, with this notification requirement, it may also require the supervision of export and the examination of merchandise prior to export. Mr. Leahy, your client would be entitled to the drawback even if the goods in question had been used in the United States before the exportation. No, Your Honor. My client would not be entitled to it. Well, how would we know? My client's burden would be to demonstrate that the goods were unused. When do you do that? When Customs requests the information after the drawback claim has been filed. And that can be done through a number of different things, including inventory records. It can be done through affidavits. It can be done through the very nature of the machine or the product coming in. Was any of that done here? It was not. The drawback claim was denied solely because the notice was not filed. But as a result of your legal argument, you're arguing the regulation's invalid. Correct. And that because the goods were exported, you're entitled to the drawback. That's correct. So even if these goods had, in fact, been used in the United States, you would still get your drawback. No, we have actually made the argument in our submission to Customs that the goods were unused and furnished evidence that the goods were unused. They were brought in for a trade show and subsequently sent. Not that we would necessarily not believe you. I'm sure your clients are representing the truth. But can't you understand that Customs might prefer, in general, in many cases, to have the option of being able to see the goods with their own two eyes? Because in many instances, that will tell them whether it is used or unused. And there may be some folks out there that aren't as scrupulous with regard to their assertions about whether the device is used or unused. I agree. And had Congress had drafted the statute so that the exploitation would be under Customs supervision, then that would not be expanding the drawback statute. But Congress did not provide for that. Customs has the opportunity to examine any merchandise being exported at any given time. They stop routinely goods being exported under the Exodus program. But if they don't know you're exporting that particular thing because you haven't given them the proper notice. Customs receives proper notice on all exportations through the automated exportation system and through the ship's export declaration. So Customs routinely inspects merchandise going out. Does that notice say this is an unused option? No. See, because that's the only issue. And I don't disagree with you. My problem is that when one looks at the statute, Congress said exported and separately destroyed under Customs supervision. It's not the only time in the drawback statute that they've made that distinction. In manufacturing drawback, they say they do not have any requirement for return to Customs custody or exploitation under Customs supervision. And yet for rejected merchandise drawback, they specifically have that requirement, a return to Customs custody. So Congress recognized that there is a distinction between exploitation under Customs supervision and just exportation. Customs has gone beyond that to establish a regulation that expands the drawback statute in a way that Congress did not intend. Let me ask you just as a practical matter. And setting aside the amount of money that happens to be at issue in this particular case because no notification was filed in this case, it doesn't seem like much of a burden on importers who then want to become exporters to file the notice. As a practical matter, why is this important? There are several reasons, Your Honor. An example of that would be a company that files a prior notice and the truck driver goes into Canada without stopping. A real issue in the Port of Buffalo right now. No drawback because the truck driver did not stop even though a notice was filed. A company needs to export merchandise within one day because the company in a foreign country needs that. The statute requires that they give at least two working days' notice prior to the goods being sent out. So I don't disagree that the requirement is not overly burdensome in many cases. Our only argument is that if Congress wanted to have this merchandise examined and exported under Customs supervision, it so would have said in the drawback statute. Now, if all we were dealing with here, I mean, I understand your argument that the notice leads to ultimately to supervision. But if all we were dealing with is notice, would you think that would be beyond the scope of what Customs could do under its regulation in promulgating authority? I could not envision a reason why Customs would ask for notice alone without having something behind it in order to, some purpose behind it in order to take some action. Okay, but indulge me. I'm the head of Customs and I just decide it would be nice to have notice because then if a problem arises at the border or something, we know what this purports to be, etc., etc. So that all we're doing is notice. That itself is not a problem, I take it, is it? Well, it's not because at this time it's required and not in a drawback context, but on any goods that are exported, a shippers export deck or an AES transaction must be filed prior to exportation. How long prior? I don't have that information. Well, but I mean, if that notice has to be provided in the same amount of time, then why isn't, that seems to make an argument that the notice in this case is even less burdensome than it otherwise would be. It's not the notice that Graham objects to. It is the exportation under Customs supervision. I understand, but I thought you said to me earlier, perhaps it was in response to Judge Moore's question, that the problem was with a customer that needed to get something right away and the notice required you to wait. But if you have to file a notice anyway, why is that a difference? You do have to file a notice, and I don't have, as a matter of fact, I can state that the time frames for the notice, the notice must be filed prior to exportation under non-drawback regulations, under just regular Customs regulations. Right. Again, the notice itself is not the objection. It is the subsequent requirement that the goods be exported under Customs supervision that we object to. If Customs does not believe that the goods are in an unused condition, Customs can ask for ancillary evidence, as they do in manufacturing drawback, where they have a manufacturing drawback. They never examine the goods on the way out from manufacturing drawback, and yet they can demand evidence that if you said you were making washing machines, that is what you sent out as a washing machine. Well, the statute also actually says that the goods have to be destroyed under Customs supervision. That's not optional at all, right? That is correct. Okay. But then the regulation says notice has to be given to give Customs the opportunity to examine the merchandise. Are there circumstances in which Commerce declines to exercise that option, or do they always insist upon seeing the merchandise? No. There are circumstances when the Customs Service will decline to examine the merchandise in an exportation sense, in a destruction sense. Right. The theory is they don't have that option. So are they really exactly the same? I mean, has Commerce effectively, with its regulation, implemented the under Customs supervision language into the exported provision of the statute, or have they said, you know, just give us an opportunity, possibly? It doesn't have the same flavor, right, as the destruction part. Agreed. But if they determine that an examination is required, subsequent to the examination, the requirement then would be that the goods have to be exported under Customs supervision, a point that the government and ourselves disagree with. But when one looks at the regulations, it says if the examination will take place at a port other than the port of exportation, it must be sent in bond to the port of exportation. The in bond regulations specifically say Customs must supervise that exportation. What happens if the Customs, you give the notice, and the Customs say, we would like to inspect the merchandise. They come down, they inspect the merchandise, and they say, OK, fine. We don't have any further problems. As a rule, Customs does not then release the goods. They maintain control so that the goods that they examine are the goods that went out. And the government has admitted that in their brief, that the reason is the government wants to be sure that what they examined is what was exported. So the export and the examination go hand in hand. What is the form of maintaining control? Excuse me. Maintaining control. You say they maintain control. They put the goods somewhere? Or they put a sticker on them? In the instant case, the Graham case, if the goods were to be examined in York, Pennsylvania, which is where the goods were located, and shipped out of the Port of Houston, Texas, they would be carried by bonded carrier. Well, yeah, I understand the bonded carrier. But suppose that you've got the goods sitting in a warehouse in the Port of Houston, and you send your notice in. Customs comes over, and they look at the goods, and they say, yeah, this looks like brand new. And you say they maintain them under their supervision from then until they go on to the ship. Well, what form does that take? Customs requires that the goods be delivered to Customs custody in order for Customs to conduct the examination. In other words, the notice goes in, and Customs says, you will present these goods at Fort Creek Channel on Tuesday afternoon at 3 o'clock, which is the Port of Exportation. So that Customs gets the goods in that Customs-bonded area, if you will, or Customs-controlled area. They do the examination, and they have them subsequently exported. Unless they come to your factory in York, Pennsylvania. That is correct. If they come to my factory in York, Pennsylvania, regulation-specific. Then they want it bonded on the way out. And it must be bonded all the way with supervision at the Port of Exportation according to the bond regulations. Okay. Well, under the law, in order to get the drawback, you are supposed to first not have used the goods in the United States. And secondly, you are supposed to export the very goods you're talking about as opposed to some other goods that might have been used. Correct. How will Customs know that what's being exported was not only not used, but that it wasn't substituted goods for goods that had not been used? In the same way that they would prove a manufacturing drawback claim, and that is through the paperwork that exists behind the claim. In other words, they would accept the averment of the exporter. Along with ancillary records, for instance, inventory records, which shows that it went into your inventory and never came out again. Customs is a hard group to deal with. I say that having worked for them. They're a hard group to deal with because if they don't believe you, they say drawback denied. The burden shifts to the drawback claimant. So in your question, how would they prove it? What basis would they have for denying it unless you had a record of not having told the truth in the past? If you cannot establish that the goods have not been used, Customs will deny you a drawback because the requirement of the statute and the regulation is the goods be unused. And the burden falls to the drawback claimant to make that demonstration. I would think most of the time then, maybe setting aside an occasional instance in which urgency time is a real factor, but most of the time it would be in your interest to have Customs looking at these things for you to file a form and let Customs take it from there. So you don't have to fight with Customs over this kind of issue. Your Honor, I don't disagree with you. My only point is that they have expanded the regulation or expanded the drawback statute by writing this regulation. Congress did not allow them to do this, and therefore they've gone beyond what is allowed under the statute. Would I advise my client to do the same? Yes, I would. Under the statute, are they allowed to articulate any sort of procedure by regulation with regard to the exportation? Or are you saying no, they cannot put any spin, limits, gloss, anything on how the importer can then export the goods? No, they can. For instance, documentary evidence of exportation is something that Customs Service dictates. These are the only documents we will accept for proof of exportation. Why can they do that but not say we have to see the goods? What's the difference? The difference is that the drawback statute itself is clear and unambiguous. The Chevron deference for the issue we're talking about right now does not exist. The Chevron deference where there's a gap, that is evidence of exportation, does exist. So the Customs Service is within their rights under Chevron to make up these regulations. But in this, there is no in between. If there were a gap, then you don't really have a case, do you? That is absolutely correct. Now, if you look at the statute, we're talking about unused merchandise drawback under J, right? Correct. And the way the statute is structured, J, 1A, little i, exported, comma, or little 2, destroyed. If you look down at the next section of the statute, 2, where you're going to talk about commercially interchangeable stuff, the structure of the statute says either exported or destroyed under Customs supervision. Now, why isn't exported or destroyed under Customs supervision in the second part dealing with commercially interchangeable stuff mean that it's exported under Customs supervision or destroyed under Customs supervision? It is our position that both of those, under Customs supervision, relate solely to the destruction. Well, why would that be so in 2A and 2B, where it says, if before a three-year period beginning on the day of importation is either exported or destroyed under Customs supervision, why couldn't under Customs supervision apply equally to exportation in that section of the statute? If you just go through the statute. And if you look back in drawbacks for articles made from imported merchandise, 1313A, which has been in the statute since the 30s, upon exportation or destruction under Customs supervision. Correct. And under A, exportation has never been required under Customs supervision. Under 1313A or B. Under 1313A, this is articles made from imported merchandise. The 1930 Tariff Act provided for an exportation of articles manufactured or produced. Okay. Then the regulations under that statute required notice from 1930. At present, and for as long as I've been involved in drawbacks, there has been no notice requirement on manufacturers' drawbacks, 1313A. 1313A had a notice requirement in 1930. Notice of intent to export. I can state categorically that manufacturing drawback has no requirement for notification to Customs prior to export. Well, you probably weren't practicing in 1930. I was not practicing, but I will go back and look at my 1930 books. And again, when you look at the statutory construction, and we break it down in our brief, is how they set that out in terms of the language with a destruction under Customs supervision by a quote. It states this shall be allowed upon exportation under Customs supervision. We deal in our brief with the construction of the language itself and take you through that. Well, what I'm saying, I was just looking at that subsequent statute under J2B, and I just wondered whether the fact that their Congress had chosen to write up exported or destroyed under Customs supervision in a different way than they had done it in J1A1 and 2 shows a certain amount of sort of sloppiness in the drafting that might lead to a gap or to some confusion. Correct. And I did not address that because my drawback is J1. We look specifically at the J1 language and the J1 language. But the reason why I'm looking at it beyond the language is to try to let me look at within J itself, under J2, that Congress used a different iteration. Also under 1313C4, they used a different iteration. Has been returned to the custody of the Customs Service for exploitation or destruction under the supervision of Customs. In 1313C, they specifically provide for return to Customs custody whether you're going to destroy or whether you're going to exploit. So that clearly indicates to us that Congress recognized the difference between a C, rejected merchandise drawback, returning to Customs custody, and a J1, which is you only have to return it to Customs custody if you're going to have destruction. Very well. Why don't we hear from the government? We will give you a couple of minutes of rebuttal since we used a lot of your time with questions. Ms. Powell. Good afternoon. May it please the Court. Customs denial drawback in this case is proper. The regulation which requires prior notice of intent does not enlarge or expand the scope of the unused merchandise drawback. It simply provides Customs with a means for ensuring that those requirements are met. Is it true that under 1313A, when articles made from imported merchandise are exported, there's no requirement of a notice in advance of exportation? Yes, that is true. Why is that so? I'd like to point out that both 1313A and 1313B are the manufacturing drawback statutes, which are fundamentally different. They have different requirements, and therefore there's a different means for verifying those requirements. In A and B, the requirements are for A, imported merchandise incorporated into finished articles upon exportation or destroyed under Customs supervision, you can get a drawback. Under B, it's imported merchandise or substituted merchandise or a combination of the two upon exportation. I understand that, but I mean, the point is that what in the case of 1313A, some goods got imported into the United States, somebody paid some duty on them, right? And if you take the goods that they paid the duty on and put it in something and send it back abroad, then they're going to get all but 1% back of their duty. But how does Customs know that that's what happened unless they have some notice so they can inspect the goods that are going out? That's a good point, Your Honor. And there are record-keeping requirements for the manufacturing drawback provision under 191, I believe it's 191.26. In those provisions, Customs' concern is whether the importer... 191.26? Yes. Of the regulation, right? Yes. 19 CFR 191.26. And if you read these regulations, you can see that Customs' concern is more or less trying to determine or verify that the imported merchandise or the substituted merchandise were incorporated into the finished articles that are going to be exported. So they require various records to be kept. There's a section under 191.26 for records for the direct identification manufacturing and under the substitution manufacturing provision B. So there's different record-keeping requirements because Customs' concern with the manufacturing drawback statute is different than the one with the unused merchandise drawback. Also, an examination might not serve any purpose when it comes to manufacturing drawback because if you have imported merchandise and it's actually undergone some sort of process or manufacturing, an examination... So if you examine the goods, how do you know that there's a little piece of... that the lead was actually boiled down and put into the product? I mean, you could have, in a manufacturing, you could import something, metal, some kind of metal. It could be processed with four other types of metal to make a hybrid metal of some sort that then is exported. The physical examination of the goods wouldn't tell you what was in it. Correct. Correct, and that's why there's the record-keeping requirement under 191.26. When you get a chance, you can look. Whereas if it's the same stuff and it has not been altered or hasn't been used, a physical inspection would allow you perhaps to tell whether something had been used. Yes. If the tread was worn off the tires, for example. Yes. So in essence, that's why notice of intent to export is not required for the manufacturing drawback provisions. Also, I wanted to point out to the court that 191.35 is the notice of intent requirement, but Appellant brought up a situation where, gave an example where if something needed to be exported within one day, the notice was sort of impractical. But if it's a company that knows that it has that sort of business, the regulations provide for, you can get a blanket waiver if you know that's your type of business. So beforehand, you can have that in place. Where is the ambiguity in the statute that gives rise to the need for an interpretation by the agency? Your adversary has conceded that if Chevron applies, he recognizes that he doesn't have a case. Well, I agree with the lower court when it said that Section 1313J1, it sets forth the requirements for unused merchandise drawback. But it doesn't provide Customs with any guidance or instruction on how to ensure that those requirements are met. And I would like to point out to the court 1313L. Well, the same way that under 1313A and B, the statute doesn't tell anyone how Customs is supposed to be satisfied that what got exported was something that had some previously imported material in it. And it's through the regulations that Customs is able to satisfy itself, the record-keeping requirements. Yes. You're arguing, in essence, aren't you, that there's a gap here as opposed to an ambiguity? Right. We don't argue that there's an ambiguity. There's a gap. In that, the statute itself doesn't provide any guidance. I wonder if it's even—I mean, Chevron comes up in several different ways, whether it's a gap consciously left by Congress to be filled, in which case you give a huge amount of deference to the agency, or an ambiguity that Congress didn't necessarily intend to leave there, but did, and then you give a good deal of deference to the agency. This seems to me—well, you tell me if I'm wrong, but this seems to me to fall into the third category to which Chevron is kind of applicable, and that is that the agency has, if given by Congress the authority to promulgate regulations, procedural regulations, in effect, to administer a statutory scheme, the agency has a lot of leeway to devise dates and times and forms and notification requirements. Those kinds of procedural administrative details that fall within the agency's authority under Goyi and promulgate rules and regulations to administer the statute, which doesn't require, I guess, either an ambiguity in the substantive statute or a gap. It's just an entirely sort of a third animal, don't you think? That's right. I do agree. It's just the language of Chevron says gap. Yeah, Chevron does, but I wonder if this isn't really sort of a different beast from the technical gap or ambiguity. This is a different setting. There's clear substantive rulemaking power in this statute. Yes, Your Honor. So the argument would go to say, well, the Congress realizes that, for the most part, everybody's honest, and when they say they're exporting something that hasn't been used, it's probably so, but as a general proposition, it's a good idea for the agency to be able to insure itself of these things. And so the agency is, in order for us to be certain that everything is running according to Hoyle and efficiently, will promulgate the regulations that require this notice in advance to let us know you're sending it out to let us have a chance to come and look at it if we want to. And that that's a matter of, as the presiding judge was suggesting, it's a matter simply of the agency saying we think this is what Congress wanted us to do and administering the statute that they gave us. Yes, Your Honor, I agree. And I also agree that it is sort of a different animal than all squirrely in Chevron, but if you had to fit it in Chevron, it would be a gap. If you didn't have to fit it in Chevron, it would be a third animal. With 1313L specifically giving consequences. Isn't the problem with the gap analysis potentially that almost always when a question comes up that hasn't been specifically decided by the Congress, some specific little detail, like, for example, here you could say, well, even if the statute has said you must give notice in advance of the export, the Congress didn't say how you give the notice, it didn't say how many days, it didn't say on what piece of paper. Won't there always be a gap in the administration of any statute? Under your scenario, yes, there would always be a gap. But the actual next step is not only is there a gap, but then you also have to look at the regulation itself and determine, looking at the statute, and if there was applicable legislative history, whether the regulation is a permissible construction of the statute. So in your scenario, even if there's always a gap, you look at the regulation and see whether the regulation is consistent with the statute. Well, under your regulations, after you give the notice under 19135, there's still quite a lot of regulation going on before the goods actually manage to get exported. Isn't that true? Yes. There's the bonding procedure that's been talked about earlier. The bonding procedure comes into play, as discussed earlier, when the examination, actually, the customs decides to examine the merchandise. The examination is done at one port, and the merchandise is then transported to the port of exportation. But again, that's if— Yeah, but your regulation 19172, Export Procedure, calls for actual evidence of exportation consisting of documentary evidence, bill of lading, weigh bill, freight weigh bill, et cetera. Yes. And it's my understanding, it's government understanding, that the exportation procedures is not just limited to unused merchandise drawbacks. It's for all drawbacks. These are the procedures that you have to— Today, if it's exported, you have to show that the merchandise is actually exported. I thought you made an argument in your brief that actually what's happening here in terms of what customs is doing vis-a-vis exportation by requiring notice in advance, plus bonding, plus weigh bill, and the rest, doesn't constitute supervision. Export supervision. Yes. What is it if it's not export supervision? More or less verification to ensure the integrity of the examination. What would constitute export supervision? Well, I mean, let's assume the statute has said exported under customs supervision. What would customs have to do to supervise exportation? Other than just perhaps requiring just notice of intent and filing information, maybe customs would, I don't know, be more involved in the exam? They have to watch the goods go on the boat? Perhaps. What do they do in terms of destruction? Supervision under destruction. Do they go down and watch the stuff get burnt up? Well, under the 191.71, destruction under customs supervision, customs, the importer has to file a notice of intent, and then customs have the option to actually witness the destruction. Or if it doesn't witness destruction, the importer has to give a certificate of destruction and explain whether he burned it or whatever he did to it. We would argue that that's a little bit more, the destruction under customs supervision is just a tad more stringent than examination because destruction under the regulations has a particular meaning, meaning that the merchandise has to be in such a state that it has no more commercial value. So that's why destruction has that extra step that someone has to verify that this stuff is destroyed and there's no more value. With an examination, examine. If customs doesn't examine it, it can go on its way. So under supervision is really destruction under supervision. It really has a special concept in the regulations. So the destruction must be a somewhat rare event, I would think. I mean, you would have to have goods that were worth less than the drawback, presumably. I mean, I suppose something like 2,006 calendars, two tons of 2,006 calendars might be destroyed, but it's hard for me to think of too many instances in which that would happen. I mean, that's not something that happens every day, is it? Or do you know offhand? I don't know offhand. This is actually my first drawback case. Okay. Well, that's... It wouldn't destroy something unless it had no commercial value. And commercial value, you'd ship it someplace and get some money for it, presumably. Unless the drawback would be more... Unless it would cost more to ship it than it would worth. And I just wanted to make one last point with that. The appellant brings up the merchandise, the manufacturing drawback statute. He brings up the transporting in bond regulation. This case is about Graham failing to file the notice. We don't even get to the examination or transporting the merchandise in bond. Right, but the knee bond is connected to the thigh bone. I mean, the reason why he's talking about that is to say this is what the notice triggers. The notice triggers supervision. That's his argument. I understand his argument, but I would submit that we're still... This case is about 191.35A. Okay, very well. Thank you. We'll hear from Mr. Leahy on rebuttal. Thank you. Just an opportunity to address a couple of issues. The issue of notice of proposed rulemaking was raised. And the precursor to unused drawback was same condition drawback came to visit us in 1983. And in the notice of proposed rulemaking, the comment came in, the regulation can be used to require the imported merchandise exported in the same condition must be exported under customs supervision. Customs analysis. This is incorrect. In accordance with Public Law 96609, supervision is applicable only to destruction of the imported merchandise and not the exportation. So this issue had been vetted in 1983. And customs came back and said not to worry. You're backing the folks. And they were there. Now, with regard to... Was there at that time a requirement of notification before exportation? My recollection was that there was. And I say that, but that is... So customs' position at that point was we don't supervise, but we do require notice. It does, but the same condition drawback was brand new at that time. Before the same condition popped up at that time, you had manufacturer's drawback, no notice required, and rejected merchandise drawback, notice required in all cases. So this new animal came on the scene right about 1983. And that's where notice of proposed rulemaking said you're going to require supervision, and customs says not to worry. It won't happen. And yet, when we look at the inborn regulations, the port director shall require such supervision of the lading for exportation of merchandise to ensure that the goods go out. In fact, government's brief states that. They tell us in their brief that transporting inborn provides means for customs to track the moving merchandise from exam to exportation to ensure that the exported goods are the same as the examined goods, so that they are all linked together.  And as I say, if the statute wasn't so clear, I wouldn't be here arguing this because Chevron and Deference, in my opinion, would step in. But Congress seemed to have looked at this and said, export it or destroy it under customs supervision. And my point is, under Central Sergeant B.F. Goodrich, where customs tried to interject new requirements and regulations that weren't required in the statute, the court said, no, you can't do it. So the inborn transit is by a bonded carrier, bonded private carrier. Correct. That customs is satisfied that that bonded carrier's supervision of the goods, while they are in the bonded carrier's hands, is adequate assurance to customs that the goods are the same by the time they get off the dock. I wish there was some trusting, but in fact there's also a computer system that tracks that there's an IOU established at the time the inbond is cut, and that IOU was canceled at the port of exportation by the customs service. So they don't just accept the carrier's information. They actually have an IOU system in the inbond transaction that will cancel that transaction off the port of exportation. I don't mean to flog the history, but 1313A in the 1930 Act, exportation of goods manufactured, it's got the stuff in it. Soon after that, customs promulgated regulation requiring notice of intent to export, and I'll track through the history to find out when they stopped requiring that, but I mean for the longest time the Congress must have been aware that the customs had a checking mechanism. Correct, but as of 1980, that mechanism was not in place. I picked 1980 only because I came to run the drawback unit in Boston in 1980, so I'm familiar with my history begins about dealing with drawback. Well, but it may have been in 1980 that the customs decided we don't need this notice in advance for the manufactured goods because we're going to have all these regulations to deal with recordkeeping, and that's supervision. I mean the same type of thing. Very possibly, yeah. The issue of recordkeeping, if you take a look, the recordkeeping requirements that manufacturers drawback differ from unused, and they differ from rejected. If you had to appear in front of the relevant subcommittee in Congress and the Senate and the House that deals with these statutes, would you be comfortable telling the Senators and the Congressmen that the customs regulations are invalid, that the attempt of customs to be certain that goods that are exported were in fact not used, and that if they inspected them in York, Pennsylvania, that by the time they got to Texas it was the same goods, would you feel comfortable telling the legislators that the agency had violated the law by writing these regulations? Without question. Without question. The same as Central Sawyer, the court sent it to the agency, and BF Goodrich, the court sent it to the agency, I wouldn't have a problem saying to customs or to the Congress, Congress, you wrote the statute. Customs has interpreted your statute when no interpretation is necessary.  That is absolutely correct. If they want to change it, let them change it. Until they do, we're stuck with the statute. Okay. Thank you very much. If you have nothing further...